IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:20-cr-00182 |
| | : | |
| v. | : | Chief Judge Algenon L. Marbley |
| | : | |
| SONG GUO ZHENG, | : | |
| | : | |
| Defendant. | : | |

## **OPINION & ORDER**

This matter is before the Court on Defendant Song Guo Zheng's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 67). The Government responded in opposition and moved to dismiss Mr. Zheng's motion for lack of subject matter jurisdiction, arguing that Mr. Zheng was no longer in custody at the time he filed the motion. (ECF No. 73). Alternatively, the Government asserts that Mr. Zheng's claims are either procedurally defaulted or lack merit. (*Id.*). For the reasons set forth below, this Court **DENIES** both the Government's Motion to Dismiss for Lack of Jurisdiction (ECF No. 73 at PageID 1090-1092) and Mr. Zheng's § 2255 Motion to Vacate (ECF No. 67).

### I.   BACKGROUND

On October 21, 2020, an Information was filed in this case charging Mr. Zheng with one count of making false statements, in violation of 18 U.S.C. § 1001(a)(3). (ECF No. 30). The false statements involved an immunology research fraud scheme. The Sixth Circuit summarized the facts of this case as follows:

> Agents from U.S. Customs and Border Patrol confronted Song Guo Zheng after he arrived at the international airport in Anchorage, Alaska carrying a large amount of luggage, several electronic devices, bars of silver, his family's expired Chinese

1

passports, and a one-way ticket to China. FBI agents questioned Zheng, whom they had been investigating for nearly a year, and recovered more evidence helpful to their investigation into his fraudulent NIH [National Institutes of Health] applications. The jig was up.

On the surface, Zheng had been a successful researcher and professor for years. Born a Chinese citizen, Zheng became a permanent United States resident in 2004. He served as a professor at the University of Southern California for nearly a decade, then at Pennsylvania State University from 2013 to 2019, before The Ohio State University hired him in 2019. During his time at USC, PSU, and OSU, Zheng performed research under federally funded grants from NIH. To receive NIH funding, universities submit detailed applications that must include, among other things, several disclosures. Both during the application process and after receiving an award, funding recipients must disclose to NIH all foreign collaborations, sources of foreign research support, conflicts of interest, and the like.

But as it turns out, this was a problem for Zheng. He had many ties to Chinese organizations and these ties were both financial and information-sharing. To start, take the Chinese Talent Plans (CTP). Zheng became a member of both the CTP Hundred Talents Plan (HTP) and the CTP Thousand Talents Plan (TTP). These programs aim to recruit researchers to share developments with the Chinese government. For instance, in his application for the TTP, Zheng wrote that "biomedical products are basically monopolized by USA, Europe and Japan; the applicant will bring back several innovative products and conduct clinical transformation of the products in hoping to develop China's brand in the biomedical area." What's more, memberships in HTP and TTP allowed Zheng to set up a clinic at Sun Yat-sen University (SYSU) with funding from the Chinese government. He also joined the Pearl River Talent Plan; this membership included more than three million dollars in funding for Zheng. And Zheng received foreign grants from the National Natural Science Foundation of China (originally under the jurisdiction of China's State Council and now managed by China's Ministry of Science and Technology) and sought out other funding from ten Chinese biotechnology companies.

Including this information on NIH applications would have been fatal to Zheng's funding prospects. So Zheng clouded his ties to China and these organizations. From 2013 to 2019, Zheng repeatedly applied for and was awarded NIH funding. On none of these applications did Zheng disclose his ties to Chinese organizations, his conflicts of interest, or his foreign funding. At one point, Zheng directed an OSU employee to submit an application with false representations to NIH. All told, Zheng's fraudulent statements caused PSU and OSU to falsely certify to NIH that Zheng was free from conflicts of interest on eight applications and eight other reports. After all, each of these documents included a certification from Zheng that the statements in them were true. As a result of Zheng's fraudulent statements and documents, NIH awarded Zheng two grants totaling $3,919,561.83.

> Zheng's deception went on for years before anyone caught on. First, in late 2018, PSU confronted Zheng after an internal investigation flagged Zheng's connections to SYSU. But Zheng worked with a contact at SYSU to draft a false statement about Zheng's ties to SYSU and alleviate PSU's concerns. By 2019, the FBI began investigating Zheng. Eventually agents contacted OSU, who began their own investigation. Finally, in May 2020, OSU informed Zheng they were conducting an administrative proceeding into Zheng and his NIH grants. Six days later, Zheng left Columbus for China before federal agents apprehended him in Anchorage.

(ECF No. 62 at PageID 931-932) (footnotes, page numbers, and citations to the record omitted).

On November 12, 2020, Mr. Zheng pled guilty to the one-count Information charging him with making false statements, in violation of 18 U.S.C. § 1001(a)(3). (ECF No. 60). On May 14, 2021, Mr. Zheng was sentenced to thirty-seven months incarceration, with two years of supervised release to follow, and was ordered to pay restitution in the amount of $3,843,369.47. (ECF Nos. 51, 53). On May 27, 2021, Mr. Zheng filed a notice of appeal based on claims of ineffective assistance of counsel. (ECF No. 54). On March 10, 2022, the Sixth Circuit dismissed Mr. Zheng's claims, finding that "[a] § 2255 proceeding would allow Zheng to develop the record to best make his claim." (ECF No. 62 at PageID 936).

On February 17, 2023, Mr. Zheng was removed from the United States. (ECF No. 73 at PageID 1092). On February 28, 2023, Mr. Zheng filed the motion *sub judice*. (ECF No. 67). On September 21, 2023, the Government filed a response in opposition. Mr. Zheng did not file a reply and the time to do so has passed. Mr. Zheng's § 2255 motion is now ripe for this Court's consideration.

## II.     STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code provides a mechanism by which prisoners in federal custody can raise collateral attacks on their sentences. *See* 28 U.S.C. § 2255(a). A court must vacate and set aside a judgment or sentence if it finds "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to

3

collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Accordingly, a motion for relief under § 2255 must allege either: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citing *United States v. Addonizio*, 442 U.S. 178, 185-86 (1979)). In other words, "[r]elief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

When a factual dispute arises in a § 2255 motion, "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quotation marks and citation omitted). However, no hearing is required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.*

### III. LAW & ANALYSIS

#### A. Government's Motion to Dismiss for Lack of Jurisdiction

Before reaching the substance of Mr. Zheng's § 2255 motion, this Court addresses the Government's motion to dismiss for lack of jurisdiction. Section 2255 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The Sixth Circuit has held that the "in custody" requirement is "jurisdictional: if a petitioner is not 'in custody' when [he] files [his] petition, courts may not consider it." *Hautzenroeder v. Dewine*, 887 F.3d 737, 740 (6th Cir. 2018) (quoting *Stevenson v.*

4

*Summers*, 258 F.3d 520, 522 (6th Cir. 2001)); *Amaya v. United States*, 71 F.4th 487, 489 (6th Cir. 2023). To obtain habeas relief following release from custody, "a petitioner must demonstrate he was in custody at the time he filed the petition and his release did not render the petition moot." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

The Government argues that because Mr. Zheng filed his § 2255 motion after being removed from the United States, this Court lacks jurisdiction over the matter. Although the Government concedes that Mr. Zheng was still on supervised release at the time he filed the motion, the Government asserts that, given Mr. Zheng's removal from the United States, his unexpired term of supervised release is insufficient to satisfy § 2255's "in custody" requirement. (ECF No. 73 at PageID 1090).

The Sixth Circuit has found that a defendant who served his sentence and had been removed from United States was no longer "in custody" for purposes of § 2255. *Pilla v. United States*, 668 F.3d 368, 372 (6th Cir. 2012). It does not appear to this Court, however, that the Sixth Circuit has addressed the question of whether a petitioner, who has been removed from the United States prior to filing a § 2255 motion to vacate, but who still has time left on his or her supervised release term, meets the statute's "in custody" requirement.

Some courts have found that defendants, like Mr. Zheng, whose terms of supervised release have not expired but who have been removed from the United States prior to filing their § 2255 motions, do *not* satisfy the statute's "in custody" requirement. *See, e.g., United States v. Camick*, No. 17-3006, 2017 WL 11811332, at *2 (10th Cir. May 22, 2017); *Shishkin v. United States*, No. 10-cv-4201, 2013 WL 6859844, at *2 (E.D.N.Y. Dec. 30, 2013). Other courts, however, have found that defendants who have been removed from the United States prior to filing their § 2255 motions but who still have time left on their terms of supervised release *do* satisfy the statute's "in

5

custody" requirement. *See, e.g., Suter v. United States*, No. 3:17-cr-0046, 2019 WL 2166759, at *1 (N.D. Tex. Apr. 25, 2019), *report and recommendation adopted,* No. 3:17-cr-0046, 2019 WL 2161671 (N.D. Tex. May 17, 2019); *United States v. Milovanovic*, No. 8:03-cr-240, 2012 WL 72710, at *2 (M.D. Fla. Jan. 10, 2012).

Although, as the Government asserts, Mr. Zheng currently "has no obligation to report to a probation officer and is not under the supervision or control of the United States Probation Office," (ECF No. 73 at PageID 1092) (quoting *United States v. Camick*, No. 17-3006, 2017 WL 11811332, at *2 (10th Cir. May 22, 2017)), the Sixth Circuit has found that "a term of imprisonment or supervised release continues to run despite an alien's deportation absent an express declaration by the sentencing authority." *United States v. Velasquez-Perez*, 53 F. App'x 735, 737 (6th Cir. 2002). Based on the split caselaw, the fact that the Sixth Circuit has not addressed this precise issue, and out of an abundance of caution, this Court **DENIES** the Government's Motion to Dismiss for Lack of Jurisdiction (ECF No. 73 at PageID 1090-1092).

### B. Mr. Zheng's Claims

In his § 2255 Motion to Vacate, Mr. Zheng asserts fourteen claims for relief, each purporting to raise claims of ineffective assistance of defense counsel. (ECF No. 67). To demonstrate ineffective assistance of counsel, a petitioner must make two showings: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The court is not required to "approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. Thus, if a petitioner fails to satisfy either of the two prongs, his claim will fail. *Id.*

Under the first prong of the *Strickland* test, the petitioner must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 688. Counsel's representation, however, is deficient only where it falls "below an objective standard of reasonableness." *Id.* There is no "checklist for judicial evaluation of attorney performance," but rather "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.*

The purpose of the effective assistance guarantee of the Sixth Amendment is to ensure that criminal defendants receive a fair trial. *Strickland*, 466 U.S. at 689. While the Constitution guarantees competent counsel and a fair trial, it does not guarantee perfection. *Scott v. Mitchell*, 209 F.3d 854, 881 (6th Cir. 2000); *Harrington v. Richter*, 562 U.S. 86, 110 (2011) ("*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney'") (quoting *Strickland*, 466 U.S. at 686). Accordingly, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689. And, the *Strickland* analysis is not an opportunity to second guess trial counsel's sound strategic decisions merely because they were unsuccessful. *Id.*; *White v. McAninch*, 235 F.3d 988, 995 (6th Cir. 2000).

Under the second prong of the *Strickland* test, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The petitioner does not have to show that "his counsel's deficient conduct more likely than not altered the outcome in the case." *Goza v. Welch*, 579 F. App'x. 367, 370 (6th Cir. 2014). Instead, the question is "whether counsel's errors were serious enough to deprive the [defendant] of a proceeding the result of which was

'reliable.'" *Glenn v. Tate*, 71 F.3d 1204, 1210 (6th Cir. 1995) (quoting *Strickland*, 466 U.S. at 687)).

The Supreme Court outlined the application of *Strickland* to cases involving guilty pleas and alleged ineffective assistance of counsel:

> In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence . . . . The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, *the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.*
>
> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (emphasis added).

Liberally construing the motion *sub judice*, this Court understands Mr. Zheng to assert that counsel was ineffective in the following respects: (1) advising him to plead guilty under 18 U.S.C. § 1001(a)(3)[1] in light of his ignorance of materiality being an element of the crime; (2) advising him to plead guilty in the absence of a sufficient factual basis for the willfulness element of the crime; (3) advising him to plead guilty in the absence of a sufficient factual basis for the making or use of a false writing or document element of the offense; (4) failing to challenge the Court's jurisdiction; (5) failing to object to the sufficiency of the Information; (6) failing to challenge the

---

[1] Section 1001(a)(3) of Title 18 of the United States Code "criminalizes '[in any matter within the jurisdiction of the executive . . . branch of the Government of the United States] knowingly and willfully . . . mak[ing] or us[ing] any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.'" *Fayzullina v. Holder*, 777 F.3d 807, 813 (6th Cir. 2015) (quoting 18 U.S.C. § 1001(a)(3)).

8

selective prosecution of Mr. Zheng; (7) failing to raise an "*ex post facto*" defense; (8) failing to assert a statute of limitations defense; (9) failing to challenge venue; (10) coercing Mr. Zheng to plead guilty to a six month sentence; and (11) failing to challenge the restitution order. (*Id.*). This Court will address each of Mr. Zheng's claims in turn, grouping them were appropriate.[2]

### 1. *Alleged Ineffectiveness Related to Jurisdiction (Claim 4)*

In Claim 4, Mr. Zheng asserts that counsel performed ineffectively by failing to challenge the Court's jurisdiction to convict and sentence him on the underlying criminal matter because the NIH lacks authority to prosecute this matter. This claim is without merit, because as a sovereign nation, the United States has standing to prosecute violations of valid federal criminal statutes in federal courts. *See Wayte v. United States*, 470 U.S. 598, 607 (1985) ("In our criminal justice system, the Government retains broad discretion as to whom to prosecute.") (internal quotation marks omitted). Further, because Mr. Zheng was charged with a federal crime, this Court had subject matter jurisdiction over the prosecution of the crime. *See* 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."). Accordingly, Claim 4 is denied.

### 2. *Alleged Ineffectiveness Related to Pre-Plea Conduct (Claims 5-9)*

In Claims 5-9, Mr. Zheng alleges that counsel was ineffective for failing to object to the alleged insufficiency of the Information, selective prosecution of Mr. Zheng, *ex post facto* application of NIH regulations, statute of limitations bar, and lack of venue. These claims are waived and may not be considered by this Court because:

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter

---

[2] As an initial matter, this Court finds the motions, files, and records of this case conclusively show that Mr. Zheng is not entitled to relief under § 2255. Accordingly, this Court finds a hearing is not necessary to determine the issues and make the findings of fact and conclusions of law with respect thereto.

9

> raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [ineffective].

*Monk v. United* States, No. 3:12-cr-120, 2019 WL 10852807, at *13 (W.D. Ky. June 26, 2019) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Because Mr. Zheng's claims here do not relate to the knowing and voluntary nature of his guilty plea, they "have been waived [and] are derivatively meritless." *Kotsonis v. United States*, No. 17-5099, 2017 WL 7310633, at *2 (6th Cir. Sept. 12, 2017); *see also Monk*, 2019 WL 10852807, at *13 (waiving claim that counsel was ineffective for failing to challenge indictment, venue, and applicability of statute). Accordingly, Claims 5-9 are denied.

3. *Alleged Ineffectiveness Relating to Knowing and Voluntary Nature of Petitioner's Plea (Claims 1-3, 10)*

In Claims 1-3, Mr. Zheng asserts that counsel was ineffective by advising him to plead guilty under 18 U.S.C. § 1001(a)(3) notwithstanding the Defendant's ignorance of materiality being an element of the crime and in the absence of a sufficient factual basis for the willfulness and making or use of a false writing or document elements of the offense. In Claim 10, Mr. Zheng asserts that counsel coerced him into pleading guilty to a six month sentence. These claims, however, are belied by the record. In his affidavit, Mr. Zheng's counsel avers:

> As to the charge in the information, I spoke numerous times with Petitioner about the nature of this offense, the elements of that offense, and how the evidence reflected in the government's discovery applied to each and every element. *This included the scienter required and the materiality of the false statement, among other elements.*

(ECF No. 73-1 at PageID 1140) (emphasis added). Additionally, when the Court asked Mr. Zheng at the change of plea hearing whether counsel explained the offense, Mr. Zheng replied, "Yes." (ECF No. 60 at PageID 907, Line 4). Similarly, when the Court asked Mr. Zheng whether he

10

understood the nature and meaning of the offense, he replied, "Yes." (*Id*. at Line 7). The Court also asked Mr. Zheng's counsel his belief as to Mr. Zheng's understanding of the nature and meaning of the offense, to which counsel replied, "Your Honor, I believe that Dr. Zheng understands the nature of the charge that's been filed." (*Id*. at Lines 11-12). Mr. Zheng then went on to affirm, under oath, that he understood the nature and meaning of the charge against him. (*Id*. at PageID 911, Line 18). As the Sixth Circuit has stated, "where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (internal quotation marks and citation omitted).

Moreover, the agreed upon statement of facts attached to the guilty plea agreement and signed by Mr. Zheng provide, in relevant part:

> ZHENG *knowingly and willfully caused other materially false statements or representations to the U.S. government,* as part of his scheme to obtain NIH medical research grant funding. ZHENG sent grant funding documents to the NIH with the following certification, "I certify that the statements herein are true, complete and accurate to the best of my knowledge. I am aware that any false, fictitious, or fraudulent statements or claims may subject me to criminal civil, or administrative penalties. As PD/PI, I agree to accept responsibility for the scientific conduct of the project and to provide the required progress reports if a grant is awarded as a result of this submission."
>
> As a result of Zheng's *material misrepresentations and omissions, many in false documents sent via the Internet and email*, he caused NIH to issue through wire transfers $3,429,705.22 of U.S. government funding. The *false representations* were *material,* because Zheng believed that they would have an impact on NIH's decision to provide funding.

(ECF No. 73 at PageID 1097) (containing unsealed excerpts of Mr. Zheng's plea agreement) (emphasis added). When the Court asked Mr. Zheng during the change of plea hearing if he signed the statement of facts attached to the plea agreement and if that statement accurately reflected his involvement in the case, he responded, "Yes." (ECF No. 60 at PageID 924).

11

Finally, at the change of plea hearing, Mr. Zheng acknowledged that he had discussed with counsel how the guidelines might apply in his case, that he understood that he could receive the statutory maximum sentence of five years imprisonment, and that nobody promised or suggested that he would receive a lighter sentence if he pleaded guilty. (ECF No. 60 at PageID 913, 916, 923). Additionally, counsel's affidavit states that counsel never promised Mr. Zheng that he would receive a particular sentence if he pleaded guilty. (ECF No. 73-1 at PageID 1140).

Under these circumstances, Mr. Zheng has not proven that his counsel's conduct was deficient. Moreover, Mr. Zheng has not shown actual prejudice, because at no point does he assert that he would instead have proceeded to trial in the absence of the alleged ineffectiveness. Accordingly, Claims 1-3 and 10 are denied.

*4. Alleged Ineffectiveness Relating to Restitution Order (Claims 11-14)*

In Claims 11-14, Mr. Zheng alleges that counsel performed ineffectively by failing to challenge the restitution awarded by the Court under the Mandatory Victims Restitution Act (MVRA). Courts, including the Sixth Circuit, however, have recognized the authority of district courts to award restitution under the MVRA in cases involving violations of 18 U.S.C. § 1001. *See, e.g., United States v. Andrews,* 88 F. App'x 903, 907 (6th Cir. 2004) (conduct in violation of 18 U.S.C. § 1001(a)(2) qualified for restitution award under MVRA); *United States v. Ritchie*, 858 F.3d 201, 211 (4th Cir. 2017) (same); *United States v. Peterson*, 538 F.3d 1064, 1077-78 (9th Cir. 2008) (conduct in violation of 18 U.S.C. §1001(a)(3) qualified for restitution award under MVRA). Additionally, contrary to Mr. Zheng's contentions, counsel did object to the award of restitution on various grounds that the Court found unpersuasive. (*See* ECF No. 53 at PageID 854-861).

Mr. Zheng also appears to assert that counsel should have objected to the restitution award on the ground that the plea colloquy omitted a reference to restitution. (*See* ECF No. 67-1 at

PageID 1026). Mr. Zheng, however, was on notice that he might face a restitution obligation from the plea agreement. (*See* ECF No. 73 at PageID 1129). Further, Mr. Zheng concedes in his motion that he received notice of his potential restitution obligation in the presentence report. (*See* ECF No. 67-1 at PageID 1022). Accordingly, Claims 11-14 are denied.[3]

### IV.     CONCLUSION

For the reasons set forth above, the Government's Motion to Dismiss for Lack of Jurisdiction (ECF No. 73 at PageID 1090-1092) and Mr. Zheng's § 2255 Motion to Vacate (ECF No. 67) are both **DENIED**. Furthermore, pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, this Court **DECLINES** to issue a certificate of appealability. Specifically, Mr. Zheng has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: February 5, 2024**

---

[3] Because the Court determines that Mr. Zheng's claims lack merit, the Court does not reach the Government's alternative arguments regarding procedural default.

13